## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| PATRICIA S. WHEELER, | ) | CASE NO. 8:04CV497 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM AND ORDER |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner, Social Security Admin. | ) | |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

This matter is before the Court for review of the Commissioner's final decision denying the application for disability insurance benefits under Title II of the Social Security Act and for Supplemental Security Income benefits ("SSI") under Title XVI of the Social Security Act ("Title XVI"), 42 U.S.C. § 1381-1383f (2005), filed by the Plaintiff, Patricia Wheeler, and on the Plaintiff's Motion to Reverse and for Summary Judgment (Filing No. 16). The Court has carefully considered the record (Filing No. 13) and the parties' briefs (Filing Nos. 15 and 19).

## PROCEDURAL BACKGROUND

Plaintiff Patricia Wheeler filed her first application for benefits under the Act on February 9, 2001. That application was denied, as was her request for reconsideration. Thereafter, on November 16, 2001, Wheeler filed a second application for benefits, and a request to reopen her first application. This second request and Wheeler's request for reconsideration were also denied. In response to Wheeler's request for hearing,

Administrative Law Judge William C. Thompson ("ALJ") conducted a brief hearing[1] on Wheeler's application on July 8, 2003, and, on February 27, 2004, he issued his opinion denying Wheeler's application. (Tr. 17-25). Wheeler's appeal to the Commissioner was also denied. Wheeler commenced this action with the filing of her Complaint on October 7, 2004.

## FACTUAL BACKGROUND

### *Claimant's Hearing Testimony*

At the time of the hearing, Wheeler testified that she was 40 years old, 5' 4" tall, and weighed 143 pounds. She is divorced and has two children, one older than age 18 and a 4-year-old. She last worked on February 9, 2001, and she has not tried to work since that time. The last job she held was as an activity assistant in a nursing home, which she did for about three and a half years before she resigned. She resigned because she could no longer do the job, and she feared that her employment was about to be terminated. (Tr. 323-24). Several documents from the nursing home were accepted into evidence. These exhibits demonstrate that disciplinary measures were being taken against Wheeler by her employer based on her absenteeism, and that her physician provided medical information to support her request for excused absences from work from January into March 2001. (Tr. 146-160).

Wheeler testified that she has Crohn's Disease, also referred to as inflammatory bowel disease ("IBD"). At the time she resigned her employment at the nursing home, she

---

[1] The transcript indicates that the hearing commenced at 1:43 p.m., and concluded 27 minutes later at 2:10 p.m. (Tr. 319, 338).

2

had recently experienced a severe flare up of her Crohn's disease.  She had lost forty to fifty pounds from her weight six months before, she said she had major blood loss through her stools, she was experiencing nausea and vomiting, and "lots and lots of diarrhea."  (Tr. 324).  She said that many days she was not able to make it to work, and when she did, she spent approximately 70 percent of her time in the bathroom.  (Tr. 324).

In the past, she had also worked as a bartender and a telephone solicitor. She was a bartender for approximately four months and she was a telephone solicitor for about eight years before she was diagnosed with Crohn's disease in 1997. (Tr. 324-25).  She was working as a telephone solicitor when she originally was diagnosed with Crohn's disease.  She said that she was "in the bathroom more than I was at my phone station," and she "was not able to meet the selling quota or the dialing quota because the majority of [her] time was spent in the bathroom and not at a phone where I was able to dial."  (Tr. 333-334).

When the ALJ asked Wheeler to identify the worst problem that she has that prevents her from working, Wheeler replied, "[d]iarrhea." (Tr. 325).  She explained that she has diarrhea daily, and that she is in the bathroom with diarrhea from 10 to 20 times a day on a good day to 20 to 30 times a day on a bad day.  (Tr. 325-36).  She explained that she also has a loss of appetite, fatigue, blood in her stools, cramping, body aches, nausea and vomiting.  She testified that she has diarrhea, fatigue, and cramping every day of her life. (Tr. 326).

Wheeler is under a doctor's care, but she testified that seeing the doctor does not take the symptoms away.  (Tr. 326).  Wheeler testified that "all he can do is try and adjust medications, and keep me comfortable."  (Tr. 326).  She was currently under the care of

Dr. James Woodbury, a gastroenterologist.  ( Tr. 326).  Dr. Woodbury has examined her and has adjusted her medicines, including doubling the dosage of one prescription. Although the last time she was hospitalized from Crohn's disease was in 1998, she explained that her flare-ups in February 2001 and June 2001 were caught and treated before the need for hospitalization became acute. (Tr. 327).  Wheeler stated that her Crohn's disease is the only thing that keeps her from being employed. (Tr. 327)

When the ALJ asked Wheeler to describe her physical limitations relative to standing, walking, and  lifting, she responded that it depended on how she was feeling on a particular day.  (Tr. 327-28).  She said that she can generally walk a few blocks, stand *when experiencing back pain* for 10-15 minutes before needing a break, and lift approximately 20 pounds.  In explaining her physical limitations and her daily activities, such as housework, Wheeler explained her limitations similarly, – basically it depended on how her Crohn's disease was doing that day.  When she has  "flare ups" of her Crohn's disease, which she estimated occur five to ten days out of each month, these activities become more difficult.  (Tr. 330).

**Vocational Expert's Testimony**

Vocational expert Gail Leonhardt (hereafter "VE" or Leonhardt)  prepared an exhibit of the Plaintiff's past work, exhibit 15E, and he briefly testified about general attendance requirements for employment.  (Tr. 336).  In the fifteen lines of transcript relating to the ALJ's questioning of the VE, Leonhardt provided the foundation for exhibit 15E and gave his opinion that  employees who were absent from work an average of five times during a month, "would probably be terminated by most" employers.  (Tr. 336: 4:-18).  The ALJ then stated that the hearing was closed, but apparently off the record, the Plaintiff's counsel

4

requested time to cross-examine the VE.  The transcript, which does not indicate that an off the record discussion occurred,[2] seems to begin again with the Plaintiff's counsel, mid-sentence, asking the VE to assume that the testimony given by the Plaintiff at the hearing was credible, and then asking whether, in the ALJ's opinion, Wheeler  would be able to return to any of her past work or any other work that exists in the national economy. Leonhardt said, "[n]o."  (Tr. 336).  When asked for a reason, Leonhardt said that "there's no way she could function with those kinds of interruptions."  (Tr. 337).   Leonhardt was asked whether Wheeler would be able to sustain or maintain employment if she had to miss two to three days of work per month, and "considering everything," which I take to mean everything in the record.  Leonhardt replied, "[n]o, she would not be able to function." (Tr. 227 and Filing No. 15, Plaintiff's brief at 8-9).

**_Medical Records_**

The medical records demonstrate that Wheeler was first diagnosed with Crohn's disease in 1997, and that she was able to manage it sufficiently to maintain her employment until approximately February 2001.  The medical record dates from February 2001, when Wheeler was being treated by Stephen Lanspa, M.D. It is apparent that Wheeler obtained her treatment for Crohn's disease from a physician associated with the Creighton University Medical Center, Department of Internal Medicine in the Division of Gastroenterology (hereafter "Creighton GI department".)   In addition to Dr. Lanspa, Wheeler received treatment for her Crohn's disease from John J. Ferry, M.D.,

---

[2] Plaintiff's counsel states that the transcript is incomplete because the cross-examination of the vocational expert was only partially transcribed.  In addition, the transcript record was improperly formatted at the conclusion of the VE's testimony.  These problems were raised by the Plaintiff in her appeal argument, but no action was taken to correct the record.  The Defendant has not objected to the Plaintiff's assertions, and I have taken them to be true and accurate.

Jerry Donovan, M.D., Safak Reka, M.D., and James Woodbury, M.D., all of whom practiced through the Creighton GI department.  (Tr. 277-303).

Dr. Lanspa's record dated February 13, 2001, states that he treated Wheeler for a probable flare up of her Crohn's disease that caused a 20-pound weight loss, rectal bleeding, achiness in joints, and some nausea.  (Tr. 300)  Dr. Lanspa ordered a colonoscopy, which was conducted by Dr. Donovan and revealed "marked Crohn's disease."  She was ordered to continue taking Asacol, an anti-inflammatory, and Imuran, an immunosuppressent, and Dr. Donovan started her on Remicade.  (Tr. 296).  At the follow up visit on March 20, 2001, Wheeler said that she felt "remarkably better" but that she was still fatigued.  She expressed her desire to go back to work, part-time.  Dr. Lanspa released her to return to work part-time on March 28, 2001.  However, she returned to Dr. Lanspa on June 28, 2001, indicating that she had been experiencing abdominal cramping, diarrhea, low-grade fever, and oral ulcers. (Tr. 294).  He diagnosed another flare of Crohn's disease, the second within six months, and put her on a trial of steroids.  At that time, her weight was 125 pounds.

Wheeler continued on the steroids from June through December 2001, and gained 38 pounds in six months. (Tr. 294, 289-90).  During this six month period, Wheeler was in contact with Dr. Lanspa, and she complained of continuing diarrhea, (293), mild cramping, and edema. (291).  In December 2001, Wheeler was treated by Dr. Ferry because Dr. Lanspa was no longer seeing patients.  (Tr. 289-90).  At that visit, Wheeler complained of intermittent diarrhea, and problems with the steroids she had just stopped taking.  Dr. Ferry mentioned "medium size joint arthritis"  Dr. Ferry noted that she was given one Remicade

treatment in February 2001, but he also noted that "this was not followed up with the requisite three treatments" that might be worth trying again.

Wheeler was next examined by Creighton GI department's Dr. Reka on March 6, 2002. Wheeler described complaints of diarrhea with blood occurring "over the last three to four months." Dr. Reka's record indicates that Wheeler had been experiencing diarrhea with blood every two or three months for the last few years. He noted that Wheeler "has diarrhea with blood four or five times per day" and "diffuse abdominal pain" with "occasional vomiting." (Tr. 281). Her weight had decreased to 154 pounds. The treatment plan included another colonoscopy and an EGD to assess the degree of esophageal inflamation associated with the gastroesophageal reflux disease symptoms that she was then experiencing. Dr. Reka also took Wheeler off ibuprofen, which she had been taking for pain, because of its potential for exacerbating her IBD. (Tr. 281). The colonoscopy was performed on March 13, 2002, and it revealed colitis on the left side. (Tr. 280)

On July 25, 2002, Wheeler had her first appointment with Dr. Woodbury. She complained of increasing problems with diarrhea and more blood than usual in her stools. He noted that her blood count was normal. He increased her Asacol and had her resume taking Imuran. (Tr. 279). On February 5, 2003, Dr. Woodbury noted that a colon exam may be recommended in the "near future" "if she continues to have complaints of diarrhea which are not responding well." (Tr. 278).

On July 2, 2003, Dr. Woodbury wrote in a letter to Plaintiff's counsel that:

Patricia has a diagnosis of idiopathic inflammatory bowel disease and suffers recurring flare ups of her disease on a rather regular basis. These flare ups involve abdominal pain, diarrhea and blood loss. She reasonably would miss two to three days of work monthly because of her flare ups. . . . . The

7

prognosis in this case will be ongoing medical care as our treatment for inflammatory bowel disease is not curative but is meant to reduce the severity of symptoms.

(Tr. 303).

**Residual Functional Capacity Assessments**

On May 14, 2001, Dr. Grossman, in his capacity as a medical consultant to the Commissioner, prepared a residual functional capacities assessment on Wheeler without the benefit of a treating or examining physician source statement. (Tr. 162-170). Dr. Grossman found Wheeler had few physical limitations though he concluded that she should avoid the operation of hazardous machinery due to fatigue caused by her Crohn's disease. With regard to Wheeler's reported symptoms, Dr. Grossman concluded that Wheeler was only partially credible. His notes indicate that when he considered Wheeler's credibility, he found her comments regarding standing and walking were not consistent with the medical findings or her written testimony. (Tr. 167). He concluded that "it appears she can do a narrow range of light work." (Tr. 169). Though I do not have the benefit of page 10 of Dr. Grossman's assessment, (page 10 appears to be missing from the transcript, *see* Tr. at 170, indicating by the written word "over" and arrows pointing to the edge of the page that there was more to this record than is included in the transcript), I see no reference in the assessment to Wheeler's complaints of diarrhea or his evaluation of this symptom as a limitation to her ability to maintain or sustain employment. Dr. Grossman's assessment was affirmed. (Tr. 171).

On March 28, 2002, Dr. Reed, in his capacity as a medical consultant, prepared a residual functional capacity assessment, also without the benefit of a treating or examining

8

source statement regarding the claimant's physical capacities. (Tr. 172-183).  Dr. Reed reviewed Wheeler's written statements and the medical records.  In Dr. Reed's report, he states that the multiple symptomology identified in the Plaintiff's ADL "appear to be somewhat exaggerated in face [sic] of her medical history, though certainly Crohn's disease is by its very nature a chronic disease and undoubtedly results in frequency of bowel movements.  Credibility issues have been raised in this record previously, and again must be done so in face [sic] of the somewhat exaggerated symptomology." (Tr. 182).  Dr. Reed concluded his assessment, however, stating that "Crohn's disease by its very nature is a chronic disease associated with diarrhea." (Tr. 183).

## ALJ's FINDINGS AND DECISION

To determine disability, the ALJ must follow a sequential evaluation process and consider whether 1) the claimant is gainfully employed; 2) the claimant has a severe impairment; 3) the impairment meets the criteria of Appendix 1 to Subpart P of the SSA's Regulations No. 4 (the "listings"); 4) the impairment prevents the claimant from performing past relevant work; and 5) the impairment necessarily prevents the claimant from doing any other work.  If a claimant cannot meet the criteria at any step in the evaluation, the process ends and the determination is one of no disability.  20 C.F.R. § 416.920.

Pursuant to § 416.920, the ALJ made the following findings: 1) Wheeler has not performed any substantial gainful work activity since February 9, 2001; 2) Wheeler has the following medically determinable impairment that is "severe" within the meaning of the SSA's regulations: idiopathic inflammatory bowel disease; 3) Wheeler's medically determinable impairment does not meet or medically equal the "listings," 4) despite Wheeler's medically determinable impairment, she has the residual functional capacity to

9

perform her past relevant work as a telephone solicitor as generally performed in the national economy; and 5) Wheeler was not under a disability as defined in the Social Security Act during the relevant period.[3]

In reaching these findings, the ALJ found that Wheeler's testimony was not credible in view of the criteria set out in 20 CFR §404.1529, § 416.929, and Social Security Ruling 96-7p. The ALJ did not refer to or cite *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) (Tr. 20-25), though he considered some of the factors.

In determining Wheeler's residual functional capacity, the ALJ rejected Dr. Woodbury's assessment that Wheeler "reasonably would miss two to three days of work monthly because of her flare ups." The ALJ stated that he could not give controlling weight to Dr. Woodbury's assessment because he found a lack of clinical evidence to support it. The ALJ stated that "if the claimant's symptoms were of this severity, it would be expected that she would have reported the symptoms and would have sought treatment more frequently, and would have received more aggressive treatment." (Tr. 23). The ALJ also rejected Wheeler's subjective allegations, stating that he found inconsistencies between her verbal and written testimony, and he concluded that her symptomology was inconsistent with objective evidence in the record. While the ALJ acknowledged that Wheeler's disease "is likely to cause some limitations," the ALJ went on to describe the symptomology, and then he stated that "such frequent multiple symptoms would be expected to result in more frequent medical treatment at least to increase or adjust medications." The ALJ noted that Wheeler's weight had never fallen below normal limits,

---

[3] By implication, the ALJ made clear his refusal to reopen the February 2001 application.

and that her daily activities did not reflect the level of chronic limitation that she alleged. The ALJ observed that Wheeler may have been "more limited at the time she stopped working," but that "this level of limitation lasted far less than the twelve months duration needed to meet the definition of disability." (Tr. 23).

The ALJ acknowledged that in formulating Wheeler's residual functional capacity, he needed to consider the claimant's symptoms and the medical opinions. The ALJ noted that no treating physician provided an opinion with regard to Wheeler's exertional limitations, and so he relied on the residual functional capacities assessment performed by Dr. Grossman in concluding that Wheeler can occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, that she can stand or walk with normal breaks for 6 of 8 hours, and that she can sit with normal breaks for 6 hours. The ALJ acknowledged that Dr. Reed, who also performed a residual functional capacities assessment, had noted Wheeler had postural limitations, but he rejected Dr. Reed's assessment finding no clinical evidence to support the postural limitations. The ALJ made no specific reference to Wheeler's complaints of frequent diarrhea. Based on this analysis, the ALJ determined that Wheeler was able to perform her past relevant work as a telephone solicitor, and he denied her request for benefits.

## ISSUES RAISED ON APPEAL

Wheeler contends that the ALJ's decision is not supported by substantial evidence and is reversible. She seeks reversal of the ALJ's determination based on the following:

• the ALJ erred as a matter of law by relying on the non-examining State Agency Medical Consultant's opinion in formulating Wheeler's residual functional capacity;

11

- in  substituting his own opinion for a competent medical opinion on the appropriate treatment for Crohn's disease, the ALJ erred in stating that the severity of Wheeler's described symptoms required more frequent or aggressive treatments than Wheeler sought or received;

- the ALJ failed to give controlling weight to the opinion of Wheeler's treating physician, James Woodbury, M.D.;

- the ALJ failed to address the effect of Wheeler's absences and frequent and immediate trips to the bathroom caused by diarrhea on her ability to maintain employment; and

- the ALJ failed to properly apply Social Security Ruling 96-7 and *Polaski* in evaluating Wheeler's credibility.

## STANDARD OF REVIEW

In reviewing a decision to deny disability benefits, a district court does not reweigh evidence or the credibility of witnesses, or revisit issues de novo. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995); *Harris v. Shalala,* 45 F.3d 1190, 1193 (8th Cir. 1995).  Rather, the district court's role under 42 U.S.C. § 405(g) is to determine whether substantial evidence in the record as a whole supports the Commissioner's decision and, if so, then to affirm that decision.   *Harris,* 45 F.3d at 1193.   "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision."  *Holmstrom v. Massanari,* 270 F.3d 715, 720 (8th Cir. 2001).  As long as substantial evidence supports the Commissioner's decision, the decision may not be reversed simply because there is also substantial evidence supporting a different

12

conclusion or because a district court would have decided the case differently. *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000); *Harris,* 45 F.3d at 1193.

## DISCUSSION

### "Disability" Defined

An individual is considered to be disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must be of such severity that the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). If the claimant argues that he has multiple impairments, the Act requires the Commissioner to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B).

### Sequential Evaluation

In determining disability, the Act follows a sequential evaluation process. *See* 20 C.F.R. § 416.920. In engaging in the five-step process, the ALJ considers whether: 1) the claimant is gainfully employed; 2) the claimant has a severe impairment; 3) the impairment meets the criteria of the "listings"; 4) the impairment prevents the claimant from performing past relevant work; and 5) the impairment necessarily prevents the claimant from doing any

other work.  *Id.*  If a claimant cannot meet the criteria at any step in the evaluation, the process ends and the determination is one of no disability.  *Id.*

In this case, the ALJ completed four of five steps in the evaluation process, concluding: 1) Wheeler has not performed any substantial gainful work activity since her onset date of November 16, 2001; 2) Wheeler has the following medically determinable impairments that are "severe" within the meaning of the SSA's regulations: idiopathic inflammatory bowel disease; 3) Wheeler's medically determinable impairments do not meet or medically equal the "listings," 4) despite Wheeler's medically determinable impairments, she has the residual functional capacity to perform her past relevant work as a telephone solicitor as generally performed in the national economy; and he concluded that Wheeler was not under a disability as defined in the Social Security Act from the date of her application of November 16, 2001, through the date of the ALJ's decision.

**Analysis of Issues Raised on Appeal**

I conclude that the ALJ improperly rejected the treating physician's opinion in favor of the medical consultant's assessment, improperly substituted his own opinion in the place of a competent medical opinion, failed to give consideration to Wheeler's nonexertional limitations of daily diarrhea and abdominal cramping, and improperly evaluated Wheeler's credibility.  These errors led to the erroneous conclusion that Wheeler is not disabled under the Act.

**Treating Physician vs Consultant Physician Opinions**

"The [social security] regulations provide that a treating physician's opinion  . . .  will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

14

other substantial evidence in [the] record.'" *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (quoting 20 C.F.R. § 404.1527(d)(2)).  An ALJ may discount such an opinion if other medical assessments are supported by *superior* medical evidence, or if the treating physician has offered an opinion inconsistent with other evidence as a whole.  *Id.* at 1013; *Holmstrom*, 270 F.3d at 720.  "The ALJ's function is to resolve conflicts among 'the various treating and examining physicians,'" assigning weight to the opinions as appropriate.  *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) (quoting *Bentley v. Shalala*, 52 F.3d 784, 785, 787 (8th Cir. 1985)), *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).  Whether the weight accorded the treating physician's opinion by the ALJ is great or small, the ALJ must give "good reasons" for that weighting.  *Holmstrom,* 270 F.3d at 720; *Prosch,* 201 F.3d at 1013 (quoting 20 C.F.R. § 404.1527(d)(2)).  "The amount of weight given to a medical opinion is to be governed by a number of factors including the examining relationship, the treatment relationship, consistency, specialization, and other factors."  *Shontos v. Barnhart,* 328 F.3d 418, 428 (8th Cir. 2003).  Generally, the longer and more frequently a doctor has treated, the greater the weight given.   20 C.F.R. § 404.1527(d)(2)(i).

Wheeler's treating physicians from 1997 through the hearing date were physicians who practiced through the Creighton Medical Center's GI department.  With the exception of Wheeler's primary care physician, Dr. McStay, these physicians were the only doctors mentioned in the record who actually examined and treated Wheeler.  Two state-agency, consulting physicians became involved in this case to provide residual functional capacities assessments.  In giving greater weight to one of the consulting physicians over the treating

15

physician, I conclude that the ALJ failed to properly credit the medical opinions of Wheeler's treating physician.

Wheeler's Crohn's disease was first diagnosed by a gastroenterologist, Dr. Lanspa, working through the Creighton GI department in 1997, and Wheeler has been treated for her Crohn's disease exclusively by physicians working in that department through the time of the hearing, including Drs. Donovan, Ferry, Reka, and now Woodbury. Dr. Woodbury, who is also a gastroenterologist, has been Wheeler's treating physician for her Crohn's disease since July 2002. At the time of the hearing, Dr. Woodbury had examined Wheeler twice. Dr. Woodbury confirmed the diagnosis of idiopathic IBD, and he has opined that Wheeler would reasonably be expected to miss two to three days of work per month because of flare ups from her disease.

The ALJ's failure to give convincing weight to this opinion, he said, was based on "the lack of clinical evidence to support it." However, I find that the clinical evidence supports Dr. Woodbury's medical opinions. Two colonoscopies confirm that Wheeler suffers from IBD in the form of Crohn's disease, and that Wheeler has suffered from colitis. She has experienced an episode of anemia, and her medical records confirm that she has frequently experienced diarrhea, abdominal cramping and fatigue associated with the disease. While it appears that the ALJ relied upon Dr. Woodbury's diagnosis: idiopathic irritable bowel disease, the ALJ rejected his assessment that Wheeler would reasonably miss two to three days per month because of flare ups of her Crohn's. The medical records demonstrate, however, that Wheeler has experienced frequent flare ups of her Crohn's disease, with references to episodes in February 2001, June 2001, December 2001, March 2002, July 2002, and December 2002. Wheeler has been on

16

Asacol and Imuran during most of the relevant period, she has undergone Predisone treatments, she has taken Remicade treatments. I conclude that the medical record fully supports Dr. Woodbury's report and assessment of Wheeler.

Moreover, the ALJ's observation that Dr. Woodbury only treated Wheeler on two occasions fails to credit the continuity of treatment that Wheeler received through the Creighton GI department, and it fails to acknowledge that Dr. Woodbury had available to him Wheeler's entire treatment record for her Crohn's disease.   Dr. Woodbury's opinions are supported by medical findings and are consistent with the record as a whole.   I conclude that Dr. Woodbury's opinions are entitled to controlling weight in this case.

Instead of relying on Dr. Woodbury's opinion, the ALJ relied on the opinions provided by a state agency consulting physician who did not examine Wheeler, Dr. Grossman.   It is well-settled law in this Circuit that reliance on non-treating, or non-examining doctors to form an opinion on a claimant's residual functional capacity does not satisfy the ALJ's duty to fully and fairly develop the record.  *Dixon v. Barnhart*, 324 F.3d 997, 1002 (8th Cir. 2003) citing *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Generally, the opinion of a consulting physician does not constitute substantial evidence. *Anderson v. Barnhart*, 344 F.3d 809, 813 (8th Cir. 2003).  An ALJ may credit a one-time consultant and discount a treating physician's opinion in two instances, neither of which are present in this case: "(1) where [the one-time] medical assessments are supported by better or more thorough medical evidence, or (2) where a treating physician renders inconsistent opinions that undermine the credibility of such opinions," *id.*, *see generally Castro v. Barnhart*,  119 Fed.Appx. 840, 843 (8th Cir. 2005) and *Charles v. Barnhart*, 375 F.3d 777 (8th Cir. 2004).

17

While Dr. Grossman's opinions regarding Wheeler's exertional limitations are not materially contradicted by anything in the record, his analysis gives no hint that he considered the nonexertional impairment that is at the crux of this case: Wheeler's frequent and unexpected bouts of diarrhea.   Unlike the other state agency medical consultant involved in this case,  Dr. Reed, Dr. Grossman made no reference to Wheeler's diarrhea, except with reference generally to her symptomology, regarding which Dr. Grossman found Wheeler was only partially credible.   Dr. Grossman's assessment is not supported by "better or more thorough medical evidence" than that relied upon by Dr. Woodbury.  In fact, Dr. Woodbury had the more recent information, the benefit of actually examining Wheeler, and a more complete picture of Wheeler's medical history based on his access to her complete treatment file for Crohn's disease.

I also conclude that the ALJ improperly rejected Dr. Woodbury's opinions in place of his own, non-medical judgment.  The ALJ rejected Dr. Woodbury's assessment that Wheeler would reasonably miss two to three days of work monthly because he did not believe that Wheeler's symptoms were sufficiently severe to warrant that rate of absenteeism.  The ALJ stated, "If the claimant's symptoms were of this severity, it would be expected that she would have reported the symptoms and would have sought treatment more frequently, and would have received more aggressive treatment." (Tr. 23).  Not only is there abundant medical, clinical, and employment-related evidence to support Dr. Woodbury's assessment that Wheeler would reasonably be expected to miss two or three days per month, but there is also medical evidence negating the ALJ's factually unsupported opinion that Wheeler could have and should have done more to get control of her symptoms.  Wheeler's own treating physician adjusted her medications, and told her

18

to report in another six months, and on the second occasion, to report in another year, absent a flare up.  By deciding, on his own, that Wheeler should have sought and received more frequent or different treatment, the ALJ invaded the province of the physician.  See *McPherson v. Barnhart*, 356 F.Supp.2d 953, 964 (S.D. Iowa 2005). *See also  Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir.1975).   For all these reasons, I find that the ALJ erred 1) in failing to give "controlling weight" to Dr. Woodbury's opinion and assessment; 2) in affording Dr. Grossman's assessment controlling weight given his failure to address Wheeler's primary nonexertional impairment of chronic, frequent and unexpected diarrhea; and 3) in finding, without the benefit of any medical support, that Wheeler should have sought and would have received more frequent medical treatment for her Crohn's disease if her symptoms were as severe as she had described.

**Credibility of Wheeler's  Testimony**

Deference is generally granted to an ALJ's determination regarding the credibility of a claimant's testimony and, in particular, subjective complaints of pain.  *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (stating that if an ALJ provides a "good reason" for discrediting claimant's credibility, deference is given to the ALJ's opinion, although every factor may not have been discussed).  Because I conclude that the ALJ did not provide a good reason for discrediting Wheeler's credibility, and because I conclude that the ALJ failed to properly apply the *Polaski* factors, I reject his credibility determination regarding the Plaintiff.

The *Polaski* standard is the guide for credibility determinations in this Circuit:

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental [non physical] impairment, direct medical evidence of the cause and effect relationship between the

19

impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.

The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

1. the claimant's daily activities;
2. the duration, frequency and intensity of the pain;
3. precipitating and aggravating factors;
4. dosage, effectiveness and side effects of medication;
5. functional restrictions.

The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1986). The ALJ in this case did not mention *Polaski*, though he specifically mentioned the federal regulations and Social Security Ruling 96-7p, which also bear on a claimant's credibility.

Federal regulations provide that an ALJ must consider all symptoms, "including pain, and the extent to which symptoms can reasonably be accepted as consistent with the objective medical evidence," defined as "medical signs and laboratory findings." 20 C.F.R. § 416.929. Medical "signs" include: anatomical, physiological, or psychological abnormalities which can be observed." 20 C.F.R. § 416.928(b). "Laboratory findings" are "anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques." 20 C.F.R. § 416.928(c). Social Security Ruling 96-7p provides that a "strong indication" of the credibility of a claimant's

20

statements is the consistency of the claimant's various statements and the consistency between the statements and the other evidence in the record. [4]

Wheeler argues that the ALJ did not apply the correct standard in evaluating her credibility, particularly regarding her subjective complaints, which led to the ALJ's erroneous conclusion that Wheeler's testimony was only "marginally credible."  The ALJ based his characterization of Wheeler's testimony as only "marginally credible" on "the inconsistency of her testimony, both written and oral, with the objective evidence in the record, including clinical laboratory findings (blood tests and the more recent colonoscopy and biopsies)."  (Tr. 23).  The ALJ noted that Wheeler's weight had not fallen below normal limits and stated that Wheeler's daily activities did not reflect a level of chronic limitation that she described.   The ALJ acknowledged that Wheeler has a disease "that is likely to cause some limitations," but he concluded that those limitations are not as severe as she alleges.  (Tr. 23).

---

[4]  Ruling 96-7p provides that the ALJ must consider such factors as:

* The degree to which the individual's statements are consistent with the medical signs and laboratory findings and other information provided by medical sources, including information about medical history and treatment.

* The consistency of the individual's own statements. The adjudicator must compare statements made by the individual in connection with his or her claim for disability benefits with statements he or she made under other circumstances, when such information is in the case record. Especially important are statements made to treating or examining medical sources and to the "other sources" defined in 20 CFR 404.1513(e) and 416.913(e). However, the lack of consistency between an individual's statements and other statements that he or she has made at other times does not necessarily mean that the individual's statements are not credible. Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms. Therefore, the adjudicator will need to review the case record to determine whether there are any explanations for any variations in the individual's statements about symptoms and their effects.

* The consistency of the individual's statements with other information in the case record, including reports and observations by other persons concerning the individual's daily activities, behavior, and efforts to work. This includes any observations recorded by SSA employees in interviews and observations recorded by the adjudicator in administrative proceedings.  SSR 96-7p, 1996 WL 374186 (S.S.A.) at 5 (July 2, 1996).

It is Wheeler's reports regarding her symptomology that the ALJ apparently finds lacking in credibility.  The ALJ reported that Wheeler "states that she has symptoms daily such as blood in the stool, nausea, fever, body aches, abdominal cramps, diarrhea, weight fluctuation, loss of appetite, and frequent, unexpected bathroom visits."  The ALJ opines that "such frequent multiple symptoms would be expected to result in more frequent medical treatment, at least to increase or adjust medication."   And just prior to this discussion, the ALJ stated that he could not give convincing weight to Dr. Woodbury's assessment that Wheeler cannot work two to three days monthly because, "[i]f the claimant's symptoms were of this severity, it would be expected that she would have reported the symptoms and would have sought treatment more frequently, and would have received more aggressive treatment."  (Tr. 23).

One reason the ALJ gave for discounting Wheeler's credibility is that Wheeler's verbal and written testimony was inconsistent.  The record as a whole does not support a finding of inconsistency.  Wheeler's reports of her multiple symptomology have been materially consistent throughout the relevant time period.  In both her verbal and written testimony, she describes the symptoms of her Crohn's disease in a remarkably similar manner, noting the difference in symptomology on "good" days and "bad" days.[5]  Wheeler's

---

[5] *Compare* Ex. 2E, April 2001 Disability Report - Adult (reporting flare ups, unexpected and frequent diarrhea, bloody stools, nausea, fever, abdominal cramping, weight loss, weakness, inability to leave bathroom for long periods of time, attendance issues at work, medications to get disease under control, colonoscopy findings, flare ups every two years, stress worsening symptoms); *with* Ex. 6E, June 29, 2001. Reconsideration Disability Report (reports that abdominal cramping makes it hard to walk at times; joint and back achiness, spending great deal of time on toilet, weight loss, loss of energy, put off household chores until good day, friends and family help with cooking, telemarketing job difficult because she had very long and frequent trips to toilet that caused her to be away from desk, unable to get in dialing, had to end calls in emergency fashion, sales suffered, lost money for self and company) *with* Ex. 5E, November 10, 2001 Disability Report - Adult (reporting unexpected flare ups.  daily diarrhea, blood in stools, nausea, fevers, cramping, need to be in the bathroom over 70 percent of the time, attendance issues for work including tardiness an average of 11 days and missed work 3 or more days a month,  weight loss, ability to control with medication for a time, but inability

22

descriptions of her symptoms must be considered together with the admonition contained in Social Security Reg. 96-7p:

> The lack of consistency between an individual's statements and other statements that he or she has made at other times does not necessarily mean that the individual's statements are not credible. Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms.

When Wheeler's previous statements that are summarized in footnote 5 are considered with her hearing testimony and taking into consideration the ever-changing severity of symptoms associated with Crohn's disease, I conclude that Wheeler's statements have been largely consistent.

Her daily activities were described in a positive light by Wheeler and in a third-party statement prepared by her mother, Deanna Tomasello.   (Tr. 123-28).  For example, Wheeler retains the ability to care for herself and her family, to cook, to clean, and to socialize, but with a significant qualification that the level of her activities depends on the status of her symptoms, and that Wheeler is never free of the symptoms of her Crohn's disease.  Exhibit 9E Supplemental Information Form completed by Deanna Tomasello, April 18,  2001.   Wheeler's mother states that Wheeler's disease is part her daily routine as are its symptoms of frequent bowel movements, stomach cramps, and nausea.  She

---

to plan ahead because of bowel movements); *with* Exhibit 10E., May 6, 2001, Daily Activities and Symptoms Report (reporting ability to climbing stairs,  stand for 15-30 minutes, walk short distances, obtaining only  3-4 hours of sleep per night, describing daily flu like symptoms, stress intensifies her symptoms, adjustment of medication helps, going to bathroom 10-15 times in a day taking from 5 to 20 minutes at a time; morning and bedtime worst diarrhea); *with* Exhibit 11E, February 5, 2002, Daily Activities and Symptoms Report (described good and bad days, typically spending day laying down; bathroom 15 to 25 times per day, ability to take care of self, cook, prepare household chores, sweep, take out trash, drive car, read, watch tv, shopping, visiting with friends and family, 3 to 4 hours of sleep per night, repeating all symptoms and noting more back and joint pain, trouble urinating, depression, stating that symptoms never stop, stress worsens symptoms, now more bad days than good days).

states that Wheeler tries to function as normally as possible, that her medications help to a point, but that when she is in a flare up stage, her symptoms become greatly exaggerated and that stress aggravates her symptoms.  (Tr. 127-28).

Wheeler offered into evidence employment records from her most recent employment indicating that she was unable to consistently come to work because of her Crohn's disease, all of which supports her symptomology as she reported it.  (Tr. 146-160). The medical records from her treating physicians and from Dr. Reed support the finding that frequent and unexpected diarrhea is ever present with the disease.  Wheeler and her physicians have stated that there is no cure for the disease, but that her treatment consists of medications that diminish and control symptoms.   She has taken the primary medications used to control the symptoms of Crohn's disease, Asacol, Imuran, and Remicade and has had treatments of Predisone.  During the relevant period, her treating physicians have adjusted her medications depending on her complaints over the preceding months.

The assessment prepared by Dr. Reed on March 28, 2002, summarizes her reported symptomology, and even though he indicates that some of Wheeler's symptomology may be "somewhat" exaggerated, Dr. Reed does not identify which symptoms he considers to be somewhat exaggerated, Dr. Reed does not distance his opinion from the undisputed fact that "certainly Crohn's disease is by its very nature a chronic disease and undoubtedly results in frequency of bowel movements." (Tr. 182-83).

The Plaintiff's descriptions of her daily activities are remarkable for their consistency. Taken as a whole, Wheeler's verbal and written testimony is not contradictory.  Rather, it demonstrates that she experiences abdominal cramping and diarrhea every day, she has

good days and bad days and is in the bathroom 10 to 20 times a day on good days and more often on bad days, that her condition is chronic, that flare ups are a part of Crohn's disease, that she monitors medications to control symptoms, and stress aggravates her symptoms, and that her disease has materially interfered with her ability to work.  The severity of her pain and discomfort and her functional restrictions depend greatly on whether she is having a good day, a bad day, or is experiencing a flare up.  In short, based on her verbal and written testimony, there is no reasonable ground upon which to discredit Wheeler's credibility regarding the frequent and unexpected diarrhea she experiences on a daily basis.

The ALJ also relied upon the fact that more recent colonoscopy and biopsies demonstrated that her intestines were in better shape than they were in February 2001 when Wheeler was coming off a serious flare up.  This does not mean that her symptoms have vanished.  There is no evidence that a stabilization of her disease renders her symptom-free.  Indeed, there is evidence in the record that squarely contradicts that position, including the plaintiff's testimony, the treating physician reports, and the assessment by Dr. Reed.

The credibility afforded Wheeler's testimony is crucial because, in determining the fourth and fifth factors relating to a claimant's residual functional capacity to perform past relevant work and a range of work activities in spite of impairments, the ALJ must evaluate the credibility of a claimant's testimony regarding subjective complaints.  The underlying issue in this case is the frequency with which Wheeler would reasonably be expected to be absent from her employment, and the number and duration of unplanned bathroom breaks that she requires even on days when she would be sufficiently healthy to report for

25

work.  The Eighth Circuit long ago determined that chronic diarrhea is a nonexertional impairment that must be considered in evaluating a claimant's residual functional capacity. *Haynes v. Heckler*, 716 F.2d 483, 485 (8th Cir.1983).  This exertional impairment was not addressed by Dr. Grossman, though it was mentioned twice by Dr. Reed, and it was the basis upon which Wheeler's treating physician assessed her to be unable to work an average of two or three days per month.

Because I find that the stated basis for the ALJ's credibility determination is not supported by the evidence, I reject the ALJ's credibility determination.  I conclude that Wheeler's testimony is credible.  While she may have exaggerated a description here or there, taken as a whole, I find consistency in her statements and testimony regarding her symptomology, and this subjective evidence is supported by the medical evidence.

**Residual Functional Capacities Assessment**

Had the ALJ given Dr. Woodbury's opinions controlling weight, and had the ALJ determined that Wheeler was credible, the ALJ would have been led to the conclusion that Wheeler has been unable to engage in substantial gainful activity from February 19, 2001, through the date of the hearing.  It is the holding of this Court that the Commissioner's decision is not supported by substantial evidence on the record as a whole.

By deciding, on his own, that Wheeler should have sought and received more frequent or different treatment, the ALJ invaded the province of the physician, which the ALJ may not do.  See *McPherson v. Barnhart*, 356 F.Supp.2d 953, 964 (S.D. Iowa 2005); *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir. 1975).  By failing to consider Wheeler's nonexertional impairment of chronic, unexpected and frequent diarrhea, the ALJ failed to fairly and properly assess Wheeler's residual functional capacity.  "[P]ain and all

26

nonexertional conditions pertinent to a disability decision must be evaluated properly as symptoms. 'The RFC [residual functional capacity] assessment must address both the remaining exertional and nonexertional capacities of the individual.' SSR 96-8P." *Woody v. Barnhart,* 326 F.Supp.2d 744, 752 (W.D.Va. 2004).

Claimant suffers from chronic diarrhea as a symptom of her Crohn's disease. Diarrhea is a nonexertional impairment. *See Haynes v. Heckler*, 716 F.2d 483, 485 (8th Cir.1983)(colon discomfort and recurrent episodes of diarrhea are nonexertional impairments); *Bulpett v. Heckler,* 617 F.Supp. 850, 857 (D. Mass.1985)(loss of control over bowel movements and chronic diarrhea resulting from Crohn's disease are nonexertional impairments). The medical records throughout the relevant period make reference to Wheeler's episodic and intermittent diarrhea, and Wheeler's treating gastroenterologists and Dr. Reed acknowledge that Crohn's disease is often accompanied by diarrhea.

In *Haynes,* the Eighth Circuit remanded a case to the Commissioner because the claimant's nonexertional impairment related to diarrhea was not properly evaluated by the ALJ. The Court stated:

> [T]he administrative law judge failed to recognize that Haynes' limitations--colon discomfort and recurrent episodes of diarrhea--were nonexertional and therefore not encompassed in the definition of ability to do sedentary work. See 20 C.F.R. § 404.1567(a) (1982). Haynes' medical difficulties had nothing to do with physical exertion. Instead her difficulties manifested themselves without regard to her general bodily strength, or her physical capacity to perform exertional tasks, or her ability to fulfill the muscular and strength requirements of jobs. See 20 C.F.R. § 1545(b) (1982); Appendix 2 § 200.00(e). Thus the administrative law judge committed error when he relied on the medical-vocational guidelines to determine that Haynes was not disabled. See Appendix 2, § 200.00(e)(1). Vocational testimony was required since the guidelines could not be used to direct a determination of not disabled.

27

*Haynes,* 716 F.2d at 485.  I recognize a similar failure on the part of the ALJ in this case, with the difference being that in this case, the ALJ had a VE available to evaluate Wheeler's nonexertional impairment.  However, the ALJ did not make use of the VE's expertise.  Fortunately, in response to questions posed by Plaintiff's attorney, the VE's opinions regarding the impact of Wheeler's nonexertional limitations was adduced.

If the existence of a nonexertional impairment  interferes with a claimant's ability to do work-related activities, the ALJ must elicit testimony from a vocational expert to establish whether a significant number of jobs exists in the national economy which the claimant can perform.  *Id.   See also Dix v. Sullivan,* 900 F.2d 135, 138 (8th Cir. 1990)(holding that although claimant who suffered from Crohn's disease experienced periods of time during which she was symptom-free, she remained unable to work regularly in light of medical reports that failed to indicate any periods of time when disease was not active; referred to diarrhea and other symptoms; and indicated that her symptoms improved, but were never eliminated, by medication).

As the Eighth Circuit Court of Appeals stated in *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world."  See also *Draper v. Barnhart,* 425 F.3d 1127, 1130 -1132 (8th Cir. 2005) *quoting McCoy.*

The ALJ did not ask the VE to consider Wheeler's nonexertional impairment related to frequent diarrhea, but Wheeler's attorney did ask.  Although the record is certainly not as developed as it could have been, I find that the colloquy between Wheeler's attorney and the VE saves this record.  Wheeler's attorney asked the VE to assume that the

testimony given by the Plaintiff at the hearing  was credible.  The attorney then asked
whether Wheeler would be able to return to any of her past work or any other work that
exists in the national economy.  Leonhardt said, "[n]o."  (Tr. 336).  When asked for a
reason, Leonhardt said that "there's no way she could function with those kinds of
interruptions." (Tr. 337).  Leonhardt was asked whether Wheeler would be able to sustain
or maintain employment if she had to miss two to three days of work per month, and
"considering everything," which I take to mean everything in the record.  Leonhardt replied,
"[n]o, she would not be able to function."  (Tr. 227 and Filing No. 15, Plaintiff's brief at 8-9).
The VE testified that if Wheeler were unable to work two to three days per month, and
assuming Wheeler's credibility, and "everything" in the record, no work is possible for a
person so limited.

Dr. Woodbury's opinion that Wheeler would reasonably not be able to work two or
three days per month, as shown above, is entitled to controlling weight.  Dr. Woodbury is
Wheeler's treating physician and a specialist in gastroenterology.  His opinions are
supported by the opinions of the other physicians who have treated Wheeler through the
Creighton Medical Center's GI department. I find that Dr. Reed's assessment relative to
the undisputable symptom of frequent diarrhea associated with Crohn's disease supports
Woodbury's opinions.  Wheeler's own testimony, written and verbal, is consistent with the
medical record, as it the third-party statement provided by her mother.  I find that the
evidence in this record does not support the Commissioner's decision.  See *McPherson
v. Barnhart*, 356 F.Supp.2d 953, 964 (S.D. Iowa 2005); *Bradley v. Bowen,* 660 F.Supp.
276, 279 (W.D.Ark.1987).  Considering the evidence as a whole, it is my opinion that a
remand to take additional evidence would only delay the receipt of benefits to which

Wheeler is entitled. *See Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir.1987)(" . . . where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his disability by medical evidence on the record as a whole, we find no need to remand.").

Finally, I find that the ALJ reconsidered the merits of the application previously denied, to-wit Wheeler's April 3, 2001, application (Tr. 64), and the evidence submitted in connection with the first application including, but not limited to, Dr. Grossman's residual functional capacities assessment.  The ALJ did not expressly state that he reopened the first application, but he gave "controlling weight" to an assessment that was conducted in connection with the first application and was prepared several months before the second application was filed.  I also note that only seven months lapsed between the first and second applications, both of which identified February 9, 2001, as the date from which Wheeler could not continue employment.  Accordingly, I conclude that the first application was in fact reopened by the ALJ (though benefits for that period were denied).  Thus, the benefits awarded pursuant to this memorandum and order shall be from the date of the first application forward, as calculated by the Commissioner.  *See  Brown v. Sullivan*, 932 F.2d 1243, 1246 (8th Cir. 1991); *Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir. 1989).

## CONCLUSION

Because I conclude that substantial evidence in the record as a whole does not support the Commissioner's decision, and because I find no good cause to remand for further proceedings, I reverse the Commissioner's decision and remand to the Commission for an award of benefits.

30

Accordingly,

IT IS ORDERED:

1.      The Plaintiff's Motion for Summary Judgment (Filing No. 16) is granted;

2.      The appeal is granted;

3.      The decision of the Commissioner is reversed, and this matter is remanded to the Commissioner for an award of benefits; and

4.      Judgment in favor of the Plaintiff, Patricia Wheeler, will be entered in a separate document.

DATED this 12th day of December, 2005.

                                        BY THE COURT:

                                        s/Laurie Smith Camp
                                        United States District Judge